IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CANDY HOLMES, an individual, and RUSSELL SMITHE,[1] an individual,<br><br>                Plaintiffs,<br><br>v.<br><br>STATE OF UTAH and VERNAL CITY, and BEN MURRAY, an individual, and JOHN AND JANE DOES 1-15,<br><br>                Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br><br><br>Case No. 2:12-CV-1098 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant Vernal City's Motion for Summary Judgment.[2]  For the reasons stated below, the Court will grant the Motion.

## I.  BACKGROUND

This case arises from a series of encounters between Plaintiffs Candy Holmes ("Holmes") and Russell Smithe ("Smithe"), and a former police officer with Vernal City Police Department, Ben Murray ("Murray").  According to Plaintiffs, shortly after Holmes received a DUI, Murray began turning up at Plaintiffs' residence indicating that he was there to count Plaintiffs' oxycodone and methadone pills.  Murray began going by Plaintiffs' house once or twice per week to count the medication.  Sometime after the pill-counting trips began, Plaintiffs noticed

---

[1] It appears that Plaintiff's name should actually be spelled Smithey, as in Docket No. 25, at 6.  For purposes of clarity, the Court keeps with the parties' briefing and spells the name Smithe.

[2] The State of Utah and Ben Murray were previously dismissed from this case.  Docket Nos. 10, 25.

that some of their pills were missing.  At first they did not suspect Murray of taking the missing

pills but eventually they began to suspect him of theft.

Plaintiffs decided to record one of Murray's pill counts and the video revealed Murray

taking some of Plaintiffs' oxycodone pills.  Plaintiffs reported this incident and investigators then

set up surveillance that revealed Murray taking additional pills.  Murray admits that he took pills

on the two occasions that were video recorded and admits that he had a drug problem at the time

he took the oxycodone.

As part of Murray's position as a police officer, he had access to the Controlled

Substance Database ("Database").  The Database is an independent website owned and

maintained by the Utah Division of Occupational and Professional Licensing in connection with

the Department of Technological Services.

When authorized individuals sign into the Database, they are directed to a screen that lists

the terms by which a user agrees to abide.  The screen contains a warning that "Unauthorized

Use of the Database is a Felony Punishable by Law."[3]  The agreement notes that the Database is

"restricted information pursuant to Utah Code Annotated Section 58-37-7.5 and Utah Controlled

Substance Act Administrative Rule R156-37-610."[4]  The agreement further reads that a "person

who releases controlled substance database information in violation of the preceding statute and

rules is guilty of a third degree felony."[5]  Moreover, the agreement provides that "[a]ny person

who uses . . . any controlled substance database information for any purpose other than those set

---

[3] Docket No. 37 Ex. G, at 1.

[4] *Id.*

[5] *Id.*

forth in the preceding statute is guilty of a third degree felony and is subject to a fine of up to $5,000 for each separate violation."[6]

Supervisors are unable to access an individual user's Database account to monitor the user's activity or for any other purpose.  If a supervisor suspects a subordinate of using the Database in an unauthorized manner, the supervisor would have to report that concern to Database staff.  The staff can then open a complaint and initiate an investigation.  The Database is created and maintained in such a manner that there is no way for supervisors to conduct the investigation themselves.  Plaintiffs have cited to no evidence that there were any other incidents where a Vernal City officer used the Database improperly.[7]

Because of his conduct, Murray was arrested and subsequently fired from his position as a Vernal City police officer.  Plaintiffs have settled their claims against Murray.  Plaintiffs now assert a municipal liability claim against Vernal City.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8]  In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence

---

[6] *Id.*

[7] Docket No. 37 Ex. F, at 2; *id.* Ex. E, at 50.

[8] Fed. R. Civ. P. 56(a).

presented.[9]  The Court is required to construe all facts and reasonable inferences in the light most

favorable to the nonmoving party.[10]

## III.  DISCUSSION

Plaintiffs assert claims against Vernal City under 42 U.S.C. § 1983.  A municipality may

not be held liable under § 1983 merely because it employs a person who violated a plaintiff's

federally protected rights.[11]  Municipalities can only be held liable in a § 1983 suit where their

policies are the moving force behind an actual constitutional violation.[12]  Liability can be

imposed on the municipality only if (1) an underlying constitutional violation occurred[13] and (2)

there is a direct causal link between a government policy or custom and the alleged constitutional

violation.[14]

A municipal policy or custom may take many forms including a "failure to adequately

train or supervise employees, so long as that failure results from 'deliberate indifference' to the

injuries that may be caused."[15]  A municipality cannot be held liable for failure to train or

supervise unless it "can reasonably be said to have been deliberately indifferent to the need for

---

[9] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[10] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[11] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

[12] *Id.* at 694.

[13] *Whitewater v. Goss*, 192 F. App'x 794, 796–97 (10th Cir. 2006) (unpublished) (citing *Monell*, 436 U.S. at 694).

[14] *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002) (citation and internal quotation marks omitted).

[15] *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189–90 (10th Cir. 2010)).

further training or supervision."[16]  The Tenth Circuit, in describing the deliberate-indifference standard, has noted,

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm.  In most instances, notice can be established by proving the existence of a pattern of tortious conduct.  In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.[17]

There is no dispute that an underlying constitutional violation occurred in the instant case.  Therefore, at issue is whether there existed a direct causal link between a government policy or custom and the constitutional violation.  Plaintiffs argue that Vernal City was deliberately indifferent to the risk of a constitutional violation occurring by failing to adopt policies necessary to prevent constitutional violations and that the city showed deliberate indifference by failing to train and supervise its employees.  Defendant contends that Murray is solely responsible for his tortious conduct.  Defendant further argues that Plaintiffs cannot prove that a deficiency in training or supervision caused the constitutional violation.

The parties dispute whether Murray ever accessed the Database to retrieve unauthorized information about Plaintiffs and their prescription drug use.  However, even assuming that Murray utilized unauthorized information from the Database to steal from Plaintiffs, their claim against the City cannot prevail.

---

[16] *Id.* (citation and internal quotation marks omitted).

[17] *Bryson*, 627 F.3d at 789 (citations and internal quotation marks omitted).

In the case at hand, there is no pattern of unconstitutional behavior that would have put Defendant on notice such that its actions could be deliberately indifferent.  Plaintiffs have provided no evidence that Defendant had prior incidents involving Murray or any other officer's unauthorized use of the Database.  Because there is no pattern of tortious conduct, Plaintiffs must show that a violation of Plaintiffs' federal rights was a highly predictable or plainly obvious consequence of Vernal City's action or inaction.  Plaintiff cannot do so.

Vernal City's training as regards the Database was adequate.  Each time Murray or anyone else accessed the Database they were reminded that unauthorized use of the Database was a felony.  Users of the Database were required to enter their personal pin at every log in, indicating that they accepted the terms of agreement and would not use the Database for an improper purpose.  Murray himself admitted that he was taught that the Database could only be used when there was a drug investigation.  Murray attested that if he logged into the Database because he "was curious about" someone that log in, it "would be non-authorized," because it had "nothing to do with a drug investigation."[18]  Even if Murray's training were inadequate, extensive training is unnecessary for an officer to know that accessing the Database for improper purposes is a violation of state law.[19]  For these reasons, the Court finds that Plaintiffs cannot "prove that the deficiency in training actually caused [the constitutional violation]."[20]

Plaintiffs also argue that Defendant is liable for its failure to monitor its employees' access to the Database.  Plaintiffs concede that the city had no means to monitor its officers' use

---

[18] Docket No. 37 Ex. A, at 23.

[19] *Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998) (finding that even if training on gender issues and inmates' rights was inadequate, training was not necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior).

[20] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).

of the Database.[21]  The evidence provided by the parties demonstrates that it was not highly predictable or plainly obvious that an officer with Murray's training of the Database would abuse the Database for illegal purposes.  Therefore Defendant was not required to monitor its officers' use of the Database.  Accordingly, Vernal City is not liable for Murray's tortious conduct.

In sum, while the Court is sympathetic to Plaintiffs' plight, the Court finds no basis for holding Vernal City liable in this case.

## IV.  CONCLUSION

Based on the foregoing, it is hereby ORDERED that Defendant's Motion for Summary Judgment (Docket No. 37) is GRANTED.  The Clerk of Court is directed to enter judgment in favor of Defendant Vernal City and against Plaintiffs and close this case forthwith.

DATED this 13th day of June, 2014.

BY THE COURT:

Ted Stewart
United States District Judge

---

[21] Docket No. 38, at 7.